15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 John CHITKIN; Nancy Chitkin, individually and as guardians
ad litem for Danielle Chitkin, Plaintiffs-Appellees,
v.
LINCOLN NATIONAL LIFE INSURANCE COMPANY, and Does 1-100,
inclusive, Defendant-Appellant.
 No. 92-55406.
 United States Court of Appeals, Ninth Circuit.
 Argued Aug. 4, 1993.
Submission Deferred Aug. 6, 1993.
Submitted Nov. 3, 1993.
Decided Nov. 24, 1993.
As Amended March 9, 1994.
 
 Before: NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case concerns the interpretation of a provision of an ERISA plan. The district court granted summary judgment in favor of the Chitkins on Lincoln National's counterclaim for reimbursement of money paid to cover their medical expenses. Lincoln National appeals the district court's judgment, and we reverse.
 
 
 3
 Lincoln National issued a group insurance policy to an ERISA employee benefit plan. Danielle Chitkin, the daughter of plan member John Chitkin, was injured in an accident, and Lincoln National paid $701,048.66 to the Chitkins to cover Danielle's medical expenses. The Chitkins eventually settled their claims against a number of third party tortfeasors, receiving a total of $3,256,967.20. Lincoln National asked the Chitkins to repay the sum they had received from the insurance company. The Chitkins refused. The Chitkins subsequently brought an action against Lincoln National, alleging that the insurer had breached its duties to them by terminating its coverage of the ERISA plan. Lincoln National filed a counterclaim, seeking reimbursement for monies the Chitkins recovered from the settlement with the third party tortfeasors.
 
 
 4
 The Chitkins argue that Lincoln National lacks standing, under 29 U.S.C. Sec. 1132(a)(3), to bring its counterclaim for restitution of sums advanced because it is no longer a fiduciary of the ERISA plan. We disagree. A fiduciary's responsibilities do not suddenly terminate when the fiduciary ceases to serve as the insurer of the ERISA plan. They continue until all outstanding claims and issues between the insurer and the beneficiaries have been resolved.
 
 
 5
 The merits of this appeal center around an extremely poorly-drafted provision of the Plan's contract with Lincoln National. The provision states:
 
 
 6
 Payment made for charges must be returned to Lincoln National if:
 
 
 7
 * * *
 
 
 8
 2. a third party is determined liable for such charges.
 
 
 9
 If an individual insured under the policy has:
 
 
 10
 a. medical or dental charges ...
 
 
 11
 as a result of the negligence or intentional act of a third party, and makes a claim for benefits under the policy for such benefits under the policy for such charges ..., the insured individual or legal representative of a minor ... must agree in writing to repay Lincoln National from any amount of money received by the insured individual from the third party, or its insurer. The repayment will be to the extent of the benefits paid by Lincoln National, but will not exceed the amount of the payment received by the individual from the third party, or its insurer....
 
 
 12
 The repayment agreement will be binding upon the insured individual (or legal representative of a minor ...) whether:
 
 
 13
 a. the payment received from the third party, or its insurer, is the result of:
 
 1) a legal judgment; or
 2) an arbitration award; or
 3) a compromise settlement; or
 4) any other arrangement
 
 14
 Had Lincoln National been less sloppy in its draftsmanship, we are confident this entire dispute could have been avoided. Nonetheless, the case before us requires us to interpret the contractual provision as it exists, and it is to that task that we now turn.
 
 
 15
 The district court concluded, and the Chitkins argue on appeal, that under part 2.a. of the quoted provision, Lincoln National is entitled to reimbursement only if the Chitkins signed a written reimbursement agreement. Because they did not, the Chitkins argue that they are entitled to keep the sum Lincoln National had advanced them to cover Danielle Chitkin's medical expenses.
 
 
 16
 The district court treated this contractual provision as if it were designed for the benefit of the Chitkins. We read it differently. In our view, it makes sense only if read as benefitting the insurance company. The provision creates an obligation on the insured, requiring it to sign a written reimbursement agreement as a condition precedent to Lincoln National's obligation to advance funds to cover medical expenses as incurred. Were the insured to refuse to sign such an agreement, it would breach the contract and the insurance company would be excused from its contractual obligation to pay the insured's medical expenses as incurred.
 
 
 17
 A condition precedent may, of course, be waived, which is precisely what Lincoln National did when it paid the Chitkins' medical expenses even though they did not sign a written reimbursement agreement. That waiver, however, did not transform the condition precedent into a right of the Chitkins to a windfall in the form of a double reimbursement, once from Lincoln National and again from the third party tortfeasors. In other words, there is no plausible justification for allowing the Chitkins to turn the murky contract language to their advantage by using it to defeat Lincoln National's right to recover the money it advanced to them before they were reimbursed by the third party tortfeasors.
 
 
 18
 The district court's grant of summary judgment in favor of the Chitkins is reversed. The case is remanded to the district court for further proceedings consistent with this memorandum disposition.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 19
 We are faced with a reimbursement provision of an insurance policy, issued as part of an ERISA plan, that we all agree is rather poorly drafted. The majority believes, however, that there is only one reasonable interpretation of that provision and therefore reverses and orders that judgment be entered in favor of the insurance company that drafted the provision. I cannot agree with the majority that the insurer's interpretation of the provision is reasonable. For that reason, I respectfully dissent.
 
 
 20
 To recapitulate, the provision at issue here provides, in pertinent part, that:
 
 
 21
 Payment made for charges must be returned to Lincoln National if:
 
 
 22
 * * *
 
 
 23
 2. a third party is determined liable for such charges.
 
 
 24
 If an individual insured under the policy has:
 
 
 25
 a. medical ... charges ...
 
 
 26
 as a result of the negligence or intentional act of a third party, and makes a claim to Lincoln National for benefits under the policy for such charges ..., the insured individual (or legal representative of a minor ...) must agree in writing to repay Lincoln National from any amount of money received by the insured individual from the third party, or its insurer....
 
 
 27
 The repayment agreement will be binding upon the insured individual (or legal representative of a minor ...) whether:
 
 
 28
 a. the payment received from the third party, or its insurer, is the result of:
 
 
 29
 * * *
 
 3) a compromise settlement
 
 30
 (Emphasis added). While this provision is far from pellucid, it is clear that the insured "must agree in writing to repay Lincoln National from any amount of money received by the insured individual from the third party, or its insurer." Once signed, this repayment agreement is binding on the insured.
 
 
 31
 I must confess to grave doubts when an insurance company tells me that express language in an ERISA plan drafted by that company serves no true purpose and is to be ignored. At oral argument before this court, Lincoln National was unable to identify for us the purpose underlying the requirement that a repayment agreement be executed by the insured. In fact, Lincoln National insisted that the requirement that a written repayment agreement be executed was merely an "historical relic" which we should disregard. I find Lincoln National's argument rather unpersuasive.
 
 
 32
 The district court read the reimbursement provision to require execution of a repayment agreement as a prerequisite to recovery. Accordingly, the district court held that Lincoln National's failure to request that the Chitkins sign a repayment agreement prevented the insurer from recovering under this provision of the ERISA plan.[1] The majority concludes that the district court's interpretation of the provision is unreasonable. To reach such a conclusion, the majority must agree with Lincoln National that the express requirement that the insured sign a repayment agreement, quoted above, is of no import. We are told, instead, that the only language that matters is that which suggests that a general obligation to reimburse Lincoln National arises whenever payment is received from a third party. However, the language of the provision expressly indicates that the insured is obligated to sign a repayment agreement. Thus, I cannot agree with Lincoln National's characterization of the reimbursement provision.
 
 
 33
 We often apply the axiom that when the terms of an insurance policy are ambiguous they are construed against the insurer and in favor of the insured. See Commercial Union Ins. Co. v. Sponholz, 866 F.2d 1162, 1163 (9th Cir.1989). Lincoln National suggests that such a presumption carries no force when we interpret a provision in an ERISA plan. Regardless of the validity of that presumption in this context, Lincoln National agrees that we are to "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990) (quotation omitted). Here, the reimbursement provision clearly suggests that execution of a written repayment obligation is a prerequisite to reimbursement. I believe that a person of average intelligence and experience would not suspect that the written repayment agreement is merely a meaningless relic. In short, I believe the district court's interpretation of the reimbursement provision was reasonable.
 
 
 34
 Furthermore, the majority argues that the ambiguous language does serve a purpose, indeed that it is a condition precedent. Ironically, it took the majority to do what Lincoln National itself could not: come up with a justification for its own sloppy contractual language. The majority asserts that the language is a condition precedent but it has created this post hoc rationalization out of whole cloth. Lincoln National never even argued that the language was a condition precedent. Therefore, it is straining credulity to divine that the parties had this justification in mind when they signed this contract. It is incorrect to grant summary judgment to Lincoln National based on a contract interpretation which even it never envisioned.
 
 
 35
 Not only do I disagree with the majority that Lincoln National's interpretation is reasonable, I also believe that the majority should have remanded this case for trial rather than ordering summary judgment entered in favor of Lincoln National. See Evanston Ins. Co. v. Fred A. Tucker & Co., Inc., 872 F.2d 278, 279 (9th Cir.1979) ("if, on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists"); International Brotherhood of Elec. Workers v. Southern Cal. Edison Co., 880 F.2d 104, 107 (9th Cir.1989) ("When the meaning of an agreement is ambiguous on its face and contrary references as to the intent are possible an issue of material fact exists for which summary judgment ordinarily is inappropriate."). The best that can be said for the policy provision before us is that it is ambiguous. Thus, summary judgment in favor of Lincoln National is inappropriate.
 
 
 36
 I would go further. I would affirm. It is, it seems to me, more than reasonable to assume that the written repayment agreement requirement exists for a purpose. Thus, I believe that Lincoln National's interpretation, requiring us to read that obligation out of the provision, is simply unreasonable. I refuse to treat the express language of a provision drafted by a sophisticated insurance company as mere surplusage, especially where that language can only confuse plan participants. If the repayment agreement is truly a relic, entirely irrelevant to the insured's reimbursement obligation as Lincoln National contends, then Lincoln National should remove it from the reimbursement provision. See Slottow v. American Casualty Co., No. 91-55698, slip op. at 8329 (9th Cir. Aug. 4, 1993). Under these circumstances, I am particularly unsympathetic to Lincoln National's characterization.
 
 
 37
 Thus, while I join with my colleagues in condemning the sloppy drafting of this reimbursement provision, I would do more than express disapproval. I see no reason to rescue Lincoln National from its own careless drafting.
 
 
 38
 I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Presumably, if the company had requested that the Chitkins sign a repayment agreement prior to its payment of benefits or termination of their coverage and the Chitkins had refused, the Chitkins would have breached the provision and would be liable. The Chitkins concede as much in their brief. Thus, Lincoln National is not left without a remedy if it pays benefits before the execution of a repayment agreement. To receive reimbursement, it must simply request compliance with the provision's requirement before terminating coverage